UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANTANDER CONSUMER USA, )<br>         Plaintiff )<br>)<br>v             )<br>)<br>O/S DIANE MARIE (O.N. 1162513 )<br>her engines, tackle and appurtenances )<br><u>In Rem</u>, and JOHN TALARSKI, )<br><u>In Personam</u>        )<br>         Defendants )<br>)| 11 CV 1800 JCH<br><br>CIVIL ACTION NO.<br><br>*[FILED stamp: U.S. DISTRICT COURT, NEW HAVEN, CT, 2011 NOV 18 P 2:50]* |

## VERIFIED COMPLAINT

1. Plaintiff Santander Consumer USA ("Santander"), at all pertinent times was, and now is, a corporation organized under the laws of and with its principal place of business in the State of Illinois, with an address at 5201 Rufe Snow Drive, North Richland Hills, Texas 76180. At all relevant times Santander was, and now is, the holder of the Retail Installment Contract and Security Agreement and Preferred Ship Mortgage being sued upon in this case.

2. The Defendant Diane Marie (O.N. 1162513) is a 2003 Thunderbird Formula 280SS 28 foot pleasure vessel powered by two (2) 2003 Mercruiser 350 MAG Bravo III Engines Serial #'s: Port: M619453, Stbd: M619454, which is now, and during the pendency of this action will remain, within the jurisdiction of this court.

misc.santander.complaint

3. Defendant John Talarski, ("Talarski") is a resident of the State of Connecticut, whose address is 15 Case Road, Burlington, Connecticut, and at all times material hereto Talarski was, and is the owner of the Diane Marie and the obligor of the Retail Installment Contract and Security Agreement and Preferred Ship Mortgage being sued upon in this case.

4. Jurisdiction is based on the admiralty jurisdiction of this Court pursuant to 28 U.S.C. §1333, and Rule 9(h), Federal Rules of Civil Procedure.

5. On June 15, 2004 Talarski executed a Retail Installment Contract and Security Agreement to E*Trade Financial Corp., a copy of which is attached hereto as Exhibit "A", in the principal amount of $122,329.54, payable, together with interest, in 240 consecutive monthly installments of $624.65 for payments 1 through 24; and $819.96 for payments 25-240, commencing on July 15, 2004 and payable on the same day of each month thereafter. That Retail Installment Contract and Security Agreement was secured by a Preferred Ship mortgage of the Diane Marie, dated June 16, 2004 and recorded with the United States Coast Guard Documentation Center on August 31, 2004 at 12:10 p.m. Batch #283220, Doc. ID#2609388. A copy of that Mortgage is attached hereto as Exhibit "B."

6. Santander is the owner and holder of the Retail Installment Contract and Security Agreement and Preferred Ship Mortgage.

7. Talarski has failed to make payments due on the Retail Installment Contract and Security Agreement on June 15, 2011 and thereafter, and has refused to make payments after demand has been made.

8. Upon an event of default Santander may "require you to immediately pay us... the remaining balance of the amount financed..." The mortgage contains similar default provisions.

9. On September 2, 2011, the amounts due under the Retail Installment Contract and Security Agreement totaled $93,059.34, together with interest of $1,319.13 and Santander's costs and attorney's fees.

10. The Ship Mortgage Act 1920, as amended, 46 U.S.C. Section 31325(b)(1) provides, in pertinent part, that upon default of any term of a preferred ship mortgage, the mortgage lien may be enforced by a suit *in rem* in admiralty.

11. By reason of the failure of Talarski to pay as described above, the Plaintiff has sustained damages and losses in the amount of Ninety Three Thousand Fifty Nine and 34/100 ($93,059.34) Dollars, together with accrued interest, attorneys fees, the costs of the action, and the costs of storage and custody of the Diane Marie.

WHEREFORE Plaintiff prays that:

a. Process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction may issue against the said Diane Marie, her engines, tackle, and appurtenances;

    b.    That all persons having or claiming to have any interest therein may be cited to appear and answer under oath all and singular the matters aforesaid;

    c.    That Plaintiff may have judgment against the Diane Marie, her engines, tackle and appurtenances for the damages sustained as aforesaid together with interest and costs.

    d.    That the Diane Marie may be condemned and sold to pay for same;

    e.    That process in due form of law according to the practice of this Honorable Court may issue against the Defendant, John Talarski, and that he may be cited to appear and answer under oath all and singular the matters aforesaid;

    f.    That Plaintiff may have judgment against said John Talarski for its damages as aforesaid, together with interest and costs;

g.  That Plaintiff may have such other and further relief as may be just and proper.

Respectfully Submitted,

Santander Consumer USA

by its attorneys

Date: Nov. 18, 2011

_____
Richard C. Feldman
Evans, Feldman & Ainsworth, L.L.C.
261 Bradley St. Box 1694
New Haven, CT 06507-1694
Tel. 203 772-4900
Fax. 203 782-1356
ct 05931
rcfeldman@snet.net

VERIFICATION

State of Texas)
County of Tarrant)                ss  North Richland Hills,                2011


    Sergio Padilla, first being duly sworn, deposes and says:

    I am the Vice President, Corporate Legal of Santander Consumer USA, the Plaintiff herein. I have read the foregoing Verified Complaint, am familiar with the facts alleged in it, and the matters contained therein are true to the best of my knowledge, information and belief; and so far as upon information and belief, I believe them to be true.

    The reason that I make this verification is that Santander Consumer USA is a corporation, and I am an officer thereof, duly authorized to make this verification.

Subscribed and sworn to before me this 14th day of NOVEMBER, 2011.

Notary Public
My Commission Expires: 9/01/2015

SHAMIRA N. CARTER
Notary Public, State of Texas
My Commission Expires
September 01, 2015

misc.santander.complaint

# RETAIL INSTALMENT CONTRACT AND SECURITY AGREEMENT

| | |
|---|---|
| No. | |
| Date 6/15/04 | |

**Seller:** Performance Unlimited
280 Boston Post Road
Old Saybrook, CT 06475

"We" and "us" mean the Seller above, its successors and assigns.

**Buyer:** John T[illegible]
15 Case Road
Burlington, CT 06013

"You" and "your" mean each Buyer above, and guarantor, jointly and individually.

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

| Description of Goods or Services Purchased | Serial or Unit No. | Motor or Cabinet No. | Price of Each Unit |
|---|---|---|---|
| (1) 2003 Thunderbird Formula 280SS | HIN: TNRD2561L203 | | $169,859.00 |
| (2) 2003 Mercruiser 350 MAG Bravo III Engines | Serial #: Port:M619453, Stbd:M619454 | | included |

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased. This security interest extends to all accessions, attachments, accessories and equipment placed in or on the Goods, and any proceeds of the Goods. Together, the Goods are referred to as Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $122,329.54 plus finance charges accruing on the unpaid balance at the rate of 2.100 % per year from today's date for the first 24 months, and at the rate of 5.50 % per year for the remaining term of 216 months or until maturity. Finance charges accrue on a 365 day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 5.50 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $51,786.00 |
|---|---|---|---|---|
| 4.759 % | $69,773.42 | $122,329.54 | $192,102.96 | $243,888.96 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1–24 | $624.65 | monthly beginning 7/15/04 |
| 25–240 | 819.96 | monthly beginning 7/15/06 |

☒ **Security:** You are giving a security interest in the Goods purchased.

☒ **Late Charge:** If a payment is more than 10 days late, you will be charged 5% of payment up to $10.00.

**Prepayment:** If you pay off this Contract early you will not have to pay a penalty.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

---

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____N/A_____
☐ Single ☐ Joint Prem. $_____ Term_____
Credit Disability: Insured _____
☐ Single ☐ Joint Prem. $_____ Term_____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____ d/o/b  _____ d/o/b
Buyer                     Buyer

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The deductible amount of this insurance may not exceed $___N/A___. If you get insurance from or through us you will pay $_____ for _____ of coverage.

This premium is calculated as follows:
☐ Fire-Theft and Combined Additional Coverage $_____
☐ _____ $_____
☐ _____ $_____

If you get insurance from or through us, such insurance ☐ will ☐ will not provide coverage for personal liability and property damage caused to others.

☐ **SINGLE-INTEREST INSURANCE:** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $__N/A__ for _____ of coverage.

☐ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover _____
__N/A__
This Service Contract will be in effect for _____

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Goods and/or Services Price (including sales tax of $3,471.54) | $173,330.54 |
| Service Contract, Paid to: | $_____ |
| Amount to Finance line e. (if e. is negative) | $_____ |
| Cash Price | $173,330.54 |
| Manufacturer's Rebate $_____ | |
| Cash Down Payment | $20,000.00 |
| Deferred Down Payment $_____ | |
| a. Total Cash/Rebate Down | $20,000.00 |
| b. Trade-In Allowance | $112,000.00 |
| c. Less: Amount owing | $80,214.00 |
| Paid to: E*Trade | |
| d. Net Trade-in (b. minus c.) | $31,786.00 |
| e. Net Cash/Trade-in (a. plus d.) | $51,786.00 |
| Down Payment (e.; disclose as $0 if negative) | $51,786.00 |
| Unpaid Balance of Cash Price | $121,544.54 |
| Paid to Public Officials - Filing Fees | $_____ |
| Insurance Premiums* | |
| To: UCC-1 | $25.00 |
| To: Coast Guard Docs | $510.00 |
| To: CT Reg. Fee | $250.00 |
| To: _____ | $_____ |
| Total Other Charges/Amounts Pd. to Others | $785.00 |
| Less: Prepaid Finance Charges | $_____ |
| Amount Financed | $122,329.54 |

*We may retain or receive a portion of this amount.

---

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

**NOTICE TO THE BUYER**
1. Do not sign this contract before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of the contract when you sign it. 3. Under the law, you have the following rights, among others: (a) To pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

Buyer: _[signature]_  Date: 6/15/04
Signature

Signature: _[signature]_  Date: _____

Seller: By _[signature]_

**ASSIGNMENT:** This Contract and Security Agreement is assigned to E*Trade Consumer Finance Corp.
the Assignee, phone _____. This assignment is made ☐ under the terms of a separate agreement, ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.
Seller: By _[signature]_   Date _____

CONNECTICUT RETAIL INSTALMENT CONTRACT AND SECURITY AGREEMENT (page 1 of 2)

GOODS AND SERVICES – NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOME

EXHIBIT A

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** We have been given the opportunity to purchase the Goods or described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract (except as prohibited by law).

If you default, you agree to pay attorneys' fees and court costs. Attorneys' fees shall not exceed fifteen percent of the amount due and payable under this Contract when referred to an attorney, not a salaried employee of the holder of this Contract, for collection.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the rights and remedies provided by law and this Contract. Our rights are subject to your limited right to notice of default or notice of your right of redemption under Conn. Gen. Stat. § 36a-705. Our remedies include the following:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
E. When permitted by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, subject to any right to cure you may have, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

_____  _____
Signature                         Date

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guaranties executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Goods have been delivered to the Buyer in good condition and have been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

**UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.**

**WITH RECOURSE:** If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Document Type: MORTGAGE
Batch Number: 283220
Document ID: ▓▓▓388
User ID: SCANNER5
Filed Date/Time: 31-AUG-2004 12:10 PM

**E✱TRADE FINANCIAL**

# SHIP MORTGAGE

This is a First Preferred Ship Mortgage ("Mortgage") dated __June 16__, __2004__ in the amount of $ __122,329.54__ on the vessel ("Vessel") known as " __DIANE MARIE__ " hull/official number __TNRD25611203__ __1102513__.

THE AMOUNT OF THIS MORTGAGE, as required to be shown by Chapter 313 of Title 46 of the United States Code (Commercial Instruments and Maritime Liens), is $ __122,329.54__. This Mortgage also secures repayment of simple interest as it accrues, subject to appropriate prepayment credit, as well as performance of the representations, warranties and promises contained in this Mortgage and the Contract referred to below.

Mortgagor: __John Talarski__
__sole owner__

the sole owner(s)/managing owner of the Vessel, residing at: __15 Case Road, Burlington, CT 06013__

Mortgagee: Wilmington Trust Company, as Trustee 100%
(Servicer: E*TRADE Consumer Finance Corporation
3353 Michelson Drive, 2nd Floor, Irvine, CA 92612)

T511000250122
DOCID

The Mortgagee's address is: 1100 N. Market Street, Rodney Square North, Wilmington, Delaware 19890

The words "I," "me" and "my" mean everyone who grants this Mortgage as Mortgagor and the personal representatives, successors and assigns of Mortgagor. The words "you" and "your" mean the Mortgagee and anyone who has Mortgagee's rights under this Mortgage. If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, the words "it" and "its" may also mean such entity.

MULTIPLE MORTGAGORS. If more than one of us is signing this Mortgage as Mortgagor, each of us is responsible to pay the entire amount owing and do everything required of Mortgagor, unless specifically stated otherwise below. You may sue one Mortgagor without joining any Co-Mortgagor.

MORTGAGE OBLIGATION. This Mortgage secures my obligations ("Obligation") now due or which may become due in the future under this Mortgage and under a retail sales contract/disclosure and security agreement ("Contract") executed by me and now held by E*TRADE Consumer Finance Corporation, dated __June 15__, 20__04__ I am the sole owner of the Vessel.

PROMISE TO PAY. I will pay and perform the Obligation.

MORTGAGE. To secure this Obligation, I mortgage to you the whole of the vessel described above, together with its masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, fishing gear, radar and other electronic or other equipment and supplies, and other attachments and accessories, now forming part of the Vessel or used in or on the Vessel or which may become part of the Vessel in the future, whether or not aboard the Vessel, as well as insurance proceeds, warranty rights, and rights arising under contract, all called the "Vessel".

Mortgagor's Initials _____   Mortgagor's Initials _____

ETCFC IMAR First Preferred Ship Mortgage rev 02/01/04

**EXHIBIT B**

## ADDITIONAL TERMS AND CONDITIONS

1. CITIZENSHIP. I am, and shall continue to be, a citizen of the United States until this Mortgage is fully paid.
2. COMPLIANCE WITH LAWS. The Vessel is documented in my name under the laws of the United States. I own the Vessel and shall continue to be entitled to own, operate and document the Vessel under U.S. law. If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, it is duly organized and formed, and is in good standing under the laws of the state of its organization or formation.
3. SIGNING, AUTHORIZATION AND VALIDITY. If this Mortgage is given by a corporation, partnership, limited liability company, association or trust, its board of directors, partners, members or trustees, as the case may be, have authorized and directed execution and delivery of the Contract and this Mortgage, and the performance of the Obligation thereunder. The Contract and this Mortgage are legal, valid, and binding in accordance with their terms.
4. TITLE WARRANTY. I lawfully own and have possession of the Vessel free from all liens and encumbrances except for the lien of the Mortgage. I warrant clear title to the Vessel, and will be responsible for your expenses or losses if anyone else successfully claims an interest in the Vessel or any part of it.
5. RISK OF LOSS. Damage, destruction or other loss of the Vessel will not release me from my obligations to you under this Mortgage and the Contract. I will let you know as soon as I can if the Vessel becomes damaged or destroyed or disappears.
6. INSURANCE AND NOTICE OF LOSS. Until I have paid the Obligation in full, I will insure the vessel at all times for its full insurable value (what it is actually worth, unless you require replacement cost) up to the amount I owe you under this Mortgage. I will obtain insurance against fire, theft, collision, liability to others, damage caused by water and weather conditions, and such other hazards as you may reasonably ask me to cover. The insurance company must be reasonably acceptable to you. Such insurance must protect you as well as me. The insurance must be written for at least one (1) year at a time, with thirty (30) days advance notice to you of any change. I must pay the premium in advance at the beginning of each policy year. I must give you a bill from the insurance company or its agent or a copy of the declaration sheet of the policy for the new period showing the dollar limits and premiums marked "Premium Paid." I authorize the insurance company to pay any proceeds to you. You may use the proceeds of the insurance either to repair the Vessel or make payments under this Mortgage. You may sign any proof of loss and endorse any check draft or other form of payment issued by the insurance company or its agent as a loss payment. If I do not have the insurance either at the closing of my purchase of the Vessel or at any time after closing, you may buy insurance to protect yourself and me, or yourself only, and I will repay the premiums at your request with interest at the Annual Percentage Rate shown on the Contract. I will make sure that nothing is done that will cause the Vessel to be uninsured.
7. USE OF VESSEL. I will not sell the Vessel, pledge it as security for another loan, give it away, lease it or charter it without your written permission. I will not use the Vessel to carry passengers for hire, permit its use for any illegal purposes or let anyone seize the Vessel. I will not allow anyone to put a lien on it, except for this Mortgage and any other security interest or lien to you and crew's wages and dockage kept current, or, in an emergency, salvage (anyone who lowers or raises a vessel has a maritime lien on the vessel which is called a "salvage lien"). If I take the Vessel to another country, I will comply with the laws of such country and with any treaty between the United States and such country. I will not use the Vessel as my principal dwelling.
8. LOCATION OF VESSEL. I will not, without your prior written approval, remove the Vessel from the place where it is kept shown on the Borrower's Acceptance of Vessel other than for voyages with the intent of returning. I will inform you of any different winter storage location. I will not abandon the Vessel.
9. DISPLAY OF MORTGAGE ON VESSEL. I will prominently display a Notice of this Mortgage in the pilot house, if any, chart room or master's cabin. I will keep a copy of this Mortgage with the ship's papers, and will show it to all persons having business with the Vessel, and to you on demand.
10. BILLS AND TAXES. I shall pay when due any crew wages, salvage charges, repair bills, storage bills, taxes, fines or other charges on the Vessel. You may pay any of these bills, if I do not. If you do, I will repay you on demand, with interest at the Annual Percentage Rate shown in the Contract.
11. CARE OF THE VESSEL. I will keep the Vessel in seaworthy condition and repair.
12. NOTICE SEIZURE. I will notify you immediately if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody by any court or other authority. I authorize you or your agents in my name to receive or take possession of the Vessel and defend any action and/or discharge any lien, at my expense. Nevertheless, I will immediately take steps to have the vessel released.
13. INSPECTION OF VESSEL AND BOOKS. I will at all times let you inspect the Vessel and its cargoes and papers and examine my related accounts and records; and I shall tell you quarterly and, if you request, monthly, that all wages and all other claims which might have created a lien on the Vessel have been paid.
14. FURTHER ASSURANCES. From time to time, I shall sign and deliver to you any documents and assurances that you may require to maintain priority of this Mortgage and to help you carry out a resale of the Vessel in the event it becomes necessary for you to repossess it. If this Mortgage is given by a business entity, I will give you such annual and other periodic financial reports as you may reasonably request.
15. LATE CHARGES AND ATTORNEY'S FEES. I agree to pay any late charges that become due under the Contract secured by this Mortgage, and attorney's fees and court costs as allowed in the Contract, if you seek to foreclose this Mortgage.
16. DEFAULT. I will be in default ("Default") (a) if I fail to make any payment when due, or break any other promise in this Mortgage, the Contract, or any related document; (b) if I make a false or misleading statement about any material fact in this Mortgage, the Contract, the application for credit approval or any related document or report provided to you; (c) if any representation or warranty I have made is or becomes untrue, or is unfulfilled; (d) if I die; (e) if I become insolvent; (f) if I become the subject of any proceeding under any bankruptcy, insolvency or similar law; (g) if the Vessel loses its value other than through normal wear and tear; (h) if my ability to make timely payments is impaired; (i) if a receiver, trustee, or liquidator is appointed for me; (j) if the vessel is libeled, arrested, attached, detained, repossessed, requisitioned, seized, levied upon or taken into custody; (k) if any other default occurs under the Contract, this Mortgage, or any related document; (l) or if anything else happens that you in good faith and with reasonable cause believe may endanger by ability to perform the Obligation.

Mortgagor's Initials JT          Mortgagor's Initials _____

ETCFC IMAR First Preferred Ship Mortgage rev 02/01/04

If this Mortgage is given by a corporation, partnership, limited liability company, association, or trust, I also shall be in default if (m) I cease doing business as a going concern; (n) I commence liquidation of substantially all of my assets; (o) I dissolve; or (p) any interest is sold, pledged or otherwise transferred other than to an existing shareholder, partner, member or beneficiary.

17. REMEDIES. If a Default occurs, you may, without demand or notice, accelerate time for payment of any or all of the Obligation; take judicial proceedings against me, the Vessel, any guarantor, or any one or more of us, to foreclose the Mortgage and collect the Obligation; take possession of the Vessel and sell it by nonjudicial means; and enjoy all rights and remedies, judicial or nonjudicial, existing under law, equity, admiralty, this Mortgage, the Contract, or otherwise. All such rights and remedies shall be cumulative. You may exercise any right and remedy, wholly or in part, as often, and in any order as you chose. The exercise of any right or remedy shall not be an election of rights or remedies, or a waiver of the right to exercise any other right or remedy. You may delay or forebear in the exercise of any right or remedy without waiving such right or remedy. I grant you permission to enter any place where the Vessel is stored to repossess it. At your request I will return the Vessel to the place where kept mentioned above. If there is a judicial or nonjudicial foreclosure sale of the Vessel, I will execute any bill of sale for the Vessel that you direct. If there is any property aboard the Vessel which is not subject to the lien of the Mortgage, you may return it to me at my expense if I request such return. If I do not request such property to be returned within thirty (30) days after you notify me at my last known address where the property can be claimed, you may treat such property as abandoned, and deal with it in any way allowed under law.

18. USE OF VESSEL. Following a Default you may (but are not required to) charter, operate or otherwise use the Vessel as you think advisable, being accountable for net profits, if any. You may keep the Vessel free of charge at my premises or elsewhere at my expense. I hereby irrevocably appoint you, and your agents, my true and lawful attorneys-in-fact to make all necessary dispositions in my name, or in yours, of the Vessel following Default.

19. APPLICATION AND PROCEEDS. Proceeds from sale of the Vessel shall be applied (a) to the payment of all expenses, including costs of sale, repossession, attorney's fees, court costs, incurred by you for the protection of your rights, and, at your option, payment of liens against the Vessel; (b) to the satisfaction of the Obligation; and (c) to the payment of any surplus to you or to whoever else may be entitled to it. I will be liable for the payment of any deficiency.

20. RECEIVER. Following a Default, you may have a receiver appointed for the Vessel and its earnings. Any receiver shall have full rights and powers to use and operate the Vessel and to obtain a court decree ordering and directing the sale or other disposition of the Vessel.

21. USE OF VESSEL BY OWNER. Until a Default occurs, I will be permitted to retain actual possession and use of the Vessel.

22. TIME IS OF THE ESSENCE. Time is of the essence. This means that all payments which are required must be made on the day due. There are no grace periods provided in this Mortgage. If I require additional time to make a payment, I understand that I must obtain authorization or approval for making a late payment in writing in advance.

23. ADDITIONAL SECURITY. This Mortgage is given as additional security to secure my Obligation.

24. INVALID PROVISIONS. If any provision of this Mortgage cannot be enforced, the rest of the Mortgage will stay in effect.

25. AMENDMENTS. Any change in the terms of this Mortgage must be made in writing and signed by you and me.

26. JOINT AND SEVERAL LIABILITY. If there is more than one Mortgagor, each Mortgagor is jointly and severally liable to perform the Obligation.

ON THE DAY and year written at the beginning of this Mortgage I have signed this Mortgage, or caused this Mortgage to be signed by someone who is properly authorized to do so.

By _____   By _____
John Talarski

**NOTARY ACKNOWLEDGMENT**

State of _Connecticut_   County of _New Haven_

On _June 16th, 2004_ before me, _Carol Shabbott_
        Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _John Talarski_
                    Name(s) of Signer(s)

☒ personally known to me OR ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary Public _____
                                             exp. 5/31/06

ETCFC IMAR First Preferred Ship Mortgage rev 02/01/04

# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY
## UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# CERTIFICATE OF DOCUMENTATION

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| DIANE MARIE | 1162513 | TNRD2561L203 | 2003 |

| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
|---|---|---|---|
| NIANTIC, CT | FRP (FIBERGLASS) | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 8 GRT | 6 NRT | 28.0 | 9.3 | 4.9 |

**PLACE BUILT**
DECATUR, IN

**OWNERS**
JOHN TALARSKI

**OPERATIONAL ENDORSEMENTS**
RECREATION

**MANAGING OWNER**
JOHN TALARSKI
15 CASE RD
BURLINGTON, CT 06013

**RESTRICTIONS**
NONE

**ENTITLEMENTS**
NONE

**REMARKS**
NONE

**ISSUE DATE**
NOVEMBER 10, 2004

**THIS CERTIFICATE EXPIRES**
NOVEMBER 30, 2005

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

PREVIOUS EDITION OBSOLETE. THIS CERTIFICATE MAY NOT BE ALTERED

This certificate is not valid for operation of the vessel until the vessel is marked with the name, official number, and hailing port as shown on the certificate. The original certificate must be kept aboard the vessel at all times when in operation and must be presented upon the demand of federal, state or local officials for law enforcement purposes. Vessels with only a recreational endorsement may not engage in commercial trade.

Documented vessels may be registered by states for tax and other purposes and may be required to display a state decal. This certificate is valid for one year. Renewal is the responsibility of the owner. This certificate must be surrendered to the National Vessel Documentation Center (NVDC) upon a change in ownership, change in state of incorporation, or a change in any other element shown on the certificate other than change of address. This certificate is invalid for any vessel other than one documented solely for recreation when the vessel is placed under the command of a person who is not a citizen of the U.S. The vessel and its equipment are liable to seizure and forfeiture to the U.S. government and the owner is liable for a civil penalty of not more than $10,000.00 per violation. Each day of a continuing violation is a separate violation.

Any change in address of the managing owner must be reported promptly to the NVDC. You may contact us at (304) 271-2400.

**Note:** The certificate on the face of this document is not conclusive evidence of title in any proceeding where ownership is in issue. Complete records are on file at the NVDC. The sale or transfer section below is provided for convenience only.

### SALE OR TRANSFER OF VESSEL

100% OF THE VESSEL IDENTIFIED HEREIN IS SOLD (TRANSFERRED) BY THE OWNER(S) NAMED ON THE FACE OF THIS CERTIFICATE TO THE FOLLOWING PERSON(S). ADDRESS MUST BE INCLUDED.

_____

_____

IF SOLD (TRANSFERRED) TO MORE THAN ONE PERSON, THE PURCHASER(S)/TRANSFEREE(S) ARE TENANTS IN COMMON, EACH OWNING AN EQUAL UNDIVIDED INTEREST, UNLESS OTHERWISE INDICATED HEREIN: CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP    ☐ TENANCY BY THE ENTIRETIES    ☐ COMMUNITY PROPERTY

☐ OTHER

SIGNATURE OF SELLER(S)/TRANSFEROR(S) OR PERSONS SIGNING ON BEHALF OF SELLER(S)/TRANSFEROR(S):

DATE SIGNED:

NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G. OWNER, AGENT, TRUSTEE, EXECUTOR)

ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)

STATE:

ON _____ THE PERSON(S) NAMED        COUNTY:
        (DATE)

ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT IN THEIR STATED CAPACITY(IES) FOR THE PURPOSES THEREIN CONTAINED.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

### PRIVACY ACT STATEMENT

IN ACCORDANCE WITH 5 USC 552(A), THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD:

1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 USC CHAPTER 313 AND 46 CFR, PART 67.

2. THE PRINCIPAL PURPOSES FOR WHICH THIS INSTRUMENT IS TO BE USED ARE:
   (A) TO PROVIDE A RECORD, AVAILABLE FOR PUBLIC INSPECTION AND COPYING, OF THE SALE OR OTHER CHANGE IN OWNERSHIP OF A VESSEL WHICH IS DOCUMENTED, WILL BE DOCUMENTED, OR HAS BEEN DOCUMENTED PURSUANT TO 46 USC, CHAPTER 121.
   (B) RETENTION FOR EXAMINATION BY GOVERNMENTAL AUTHORITIES AND MEMBERS OF THE GENERAL PUBLIC.

3. THE ROUTINE USE WHICH MAY BE MADE OF THIS INFORMATION INCLUDES DEVELOPMENT OF STATISTICAL DATA CONCERNING DOCUMENTED VESSELS.

4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY. HOWEVER, FAILURE TO PROVIDE THE INFORMATION COULD PRECLUDE FILING OF A BILL OF SALE AND DOCUMENTATION OF THE VESSEL NAMED HEREIN PURSUANT TO 46 USC CHAPTER 121. MOREOVER, BILLS OF SALE WHICH ARE NOT FILED ARE NOT DEEMED TO BE VALID AGAINST ANY PERSON HAVING ACTUAL KNOWLEDGE OF THE SALE. (46 USC 31321 (A)).

AN AGENCY MAY NOT CONDUCT OR SPONSOR, AND A PERSON IS NOT REQUIRED TO RESPOND TO A COLLECTION OF INFORMATION UNLESS IT DISPLAYS A VALID OMB CONTROL NUMBER.

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 20 MINUTES FOR COMPLETING AND 5 MINUTES FOR FILING. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR ANY SUGGESTIONS FOR REDUCING THE BURDEN TO: COMMANDANT (G-M), U.S. COAST GUARD, 2100 2ND STREET, SW, WASHINGTON, DC 20593-0001 OR OFFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (2115-0110), WASHINGTON, DC 20503.

AD 186147722419